UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Carlos A. Seales,

                    Plaintiff,                    07-CV-2901(CPS)(CLP)

     - against -                                  MEMORANDUM OPINION
                                                  AND ORDER
Panamanian Aviation Company Limited
a/k/a COPA Airline, "Jane Doe" and
"John Doe" 1 through 10 inclusive,
the names of the last defendants
being fictitious, the true names of
the defendants being unknown to the
plaintiff,

                    Defendants.

-------------------------------------X

SIFTON, Senior Judge.

     Plaintiff Carlos Seales commenced this action against

Panamanian Aviation Company, Ltd., also known as Copa Airline

("COPA"), and "Jane Does" and "John Does" 1 through 10,

unidentified COPA employees, on July 12, 2007.  Plaintiff brings

claims of: (1) willful and/or negligent misrepresentation, (2)

gross negligence, (3) willful misconduct, and (4) intentional

infliction of emotional distress.  Plaintiff seeks damages,

alleging that based on the actions and representations of COPA

and its employees, plaintiff, following a flight on COPA from

Panama City to Jamaica, was arrested at Norman Manley Airport,

Jamaica, detained eighteen days, and prohibited from leaving

Jamaica for several months while criminal charges were pending

against him.  Presently before the Court is defendant COPA's

motion to dismiss the claims against it for lack of subject matter jurisdiction, or in the alternative, on *forum non conveniens* grounds.[1]  For the reasons set forth below, defendant COPA's motion is granted.

## BACKGROUND

The following facts are drawn from plaintiff's Amended Complaint and the affirmations, affidavits and exhibits submitted in connection with these motions.  *See Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 158-59 (2d Cir. 1980) (en banc) ("[I]t is the well established practice . . . to decide [*forum non conveniens*] motions on affidavits")*, cert. denied*, 449 U.S. 890 (1980); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings").  Disputes are noted.

The Parties

Plaintiff was born in Panama and is a dual United States and Panamanian citizen.  *See* Affirmation of Marguerite D. Peck dated June 27, 2008 ("Peck Aff."), Exs. A (Deposition of Carlos A. Seales dated April, 17 2008 ("Seales Dep.")) at 12:19-21, F (copy

---

[1] Defendant COPA filed a previous motion to dismiss plaintiff's initial complaint on *forum non conveniens* grounds, which was denied on February 26, 2008.  Defendant COPA now moves to dismiss plaintiff's Amended Complaint, in part based on new evidence received during discovery following my prior ruling.

of plaintiff's American passport), and G (copy of plaintiff's Panamanian passport); Affidavit of Carlos A. Seales dated July 22, 2008 ("Pl.'s Aff.") ¶ 2.  Plaintiff attended grammar and high school in Panama, but moved to the United States in 1975 and became an American citizen at some point between 1983 and 1987. Seales Dep. at 11:16-23, 12:16-24.  From approximately 1976 to 1989, plaintiff served in the United States military, *id.* at 13:5-8, following which he was employed in New York by the East New York Development Corporation from 1989-92, *id.* at 15:12-16:8, and thereafter, from 1996-99, by the United States Post Office. *Id.* at 16:9-14; Pl.'s Aff. ¶ 5.

As a result of post traumatic stress disorder arising from plaintiff's experiences in the military, plaintiff was discharged from his employment at the Post Office and thereafter received disability benefits from the United States Department of Veteran Administration, the Social Security Administration, and the Civil Service.  Seales Dep. at 18:8-17; Pl.'s Aff. ¶ 6.  These benefits are deposited into plaintiff's bank account in New York.  Pl.'s Aff. ¶ 6; *see also id.* Ex. 4 (copy of first page of two of plaintiff's New York bank statements; no specific transactions reflected).  Plaintiff also receives Medicare benefits and medical treatment in the United States.  *Id.* ¶ 7; *see also id.* Ex. 5 (copy of medicare card).  Plaintiff is a registered voter in the State of New York.  *Id.* ¶ 8; *see also id.* Ex. 6 (copy of

undated "NYC Vote" card). Plaintiff's New York driver's license
expired in 2005, and plaintiff states that he did not renew it
because he no longer owns a car or drives in New York. *Id.* ¶ 9;
*see also id.* Ex. 7 (copy of expired driver's licence).

Plaintiff alleges that he currently resides at 318 Beach
86th Street in Rockaway Park, New York, with his sister, nephews,
and nieces. *Id.* ¶ 3; Seales Dep. at 5:5-14. The address listed
on plaintiff's expired driver's license is 135 28th St. in
Brooklyn, New York, where plaintiff's former wife and some of his
children live, and where plaintiff receives some mail. Pl.'s
Aff. ¶¶ 4, 9, *see also id.* Ex. 2 (copy of mail dated May 2008
directed to plaintiff at the 135 28th St. address, including cell
phone bill in plaintiff's name, which plaintiff testified was for
his daughter, *see* Seales Dep. at 54:3-6). Plaintiff last resided
at the 135 28th St. address in 1998. Seales Dep. at 36:6-8.

Plaintiff is currently unemployed, *id.* at 8:6-8, but serves
as a consultant to the International Rastafarian Organization,
which, according to plaintiff, requires frequent travel to
Jamaica and Panama. Pl.'s Aff. ¶ 10. Despite his frequent
travel, plaintiff states that he never intended to abandon and
has not abandoned his residence and domicile in the State of New
York. *Id.* Plaintiff is required to obtain a visa at the airport
each time he enters Jamaica, and his stay in Jamaica is limited
to between 10 and 90 days on each visit. *Id.* ¶ 12; Seales Dep.

at 74:5-8.  Other than from October 2005 to April 2006, when, as discussed more fully below, plaintiff was prohibited from leaving Jamaica due to pending criminal charges, plaintiff states that he has not overstayed his visa.  *Id.*

According to defendant COPA, however, plaintiff spends most of his time in Jamaica or Panama and is not currently a resident or domiciliary of the State of New York, nor was he at the time this action was commenced.  Peck Aff. ¶ 4.  Plaintiff's passports, which were produced to defendants on June 6, 2008, reveal that plaintiff spent approximately nine months of the year 2007 in Jamaica, and eight months of the year 2006 in Panama. *Id.* ¶¶ 29-30.  In its moving papers, defendant COPA argues that the passports show that plaintiff was in the United States for only one week in 2006 and six weeks in 2007, and that plaintiff was not in the Unites States when this action was commenced on July 17, 2007.  Def.'s Memo. at 4-5.  Other than noting that plaintiff traveled approximately 11 times between the United States, Jamaica, Chile, and Panama in 2006, and approximately ten times between the same countries in 2007, *see* Pl.'s Aff. ¶ 18, plaintiff does not dispute defendant COPA's reading of his passports.[2]

Defendant COPA also points to a written statement plaintiff

_____

[2] The copies of plaintiff's passports offered on this motion are illegible and it is impossible to decipher the stamp dates to determine when plaintiff was where in 2006 and 2007.

made to the Jamaican police in October 2005, in which he
affirmed: "I reside at 3 **MAJAQUAL, ARRAIJAN PANAMA**.  I HAVE BEEN
RESIDING AT THIS ADDRESS SINCE 1999.  **PREVIOUSLY** I resided in
Brooklyn New York."  Peck Aff. Ex. E (copy of statement)
(emphasis in original); *see also* Seales Dep. at 126:10-128:18
(acknowledging authenticity of statement).[3]  In addition, as
previously noted by this Court, in an application submitted
between October 2005 and April 2006 in connection with criminal
charges then pending against plaintiff, plaintiff's attorney in
Jamaica stated that "[plaintiff] intended to obtain advice . . .
as to the correct procedure to take his licenced firearm to
Jamaica *where he was also living* with his wife, Iffya, his
daughter of 8 months (then) and his wife's three (3) children,"
and that "[plaintiff] was in the process of *gradually moving to
Jamaica*."  *Seales v. Panamanian Aviation Co. Ltd.,* No.
CV-07-2901, 2008 WL 544705, at *1 n.2 (E.D.N.Y. Feb. 26, 2008)
(emphasis added).

At some point during the course of plaintiff's service to
the International Rastafarian Organization, plaintiff met and
fell in love with Iffiya Homes, a Jamaican citizen and resident.
Pl.'s Aff. ¶ 13.  On March 8, 2005, the couple's first child was

---

[3] Plaintiff explained at his deposition that he goes "back and forth"
between Brooklyn and Panama, stating specifically: "I reside there [in Panama]
when I'm there and when I'm in Brooklyn, I reside in Brooklyn."  Seales Dep.
at 127:24-128:2.

born in Panama.  Seales Dep. at 24:16-25:7.  Thereafter, the
family remained in Panama for approximately three months, and
then traveled to and remained in Jamaica for about three months.
*Id.* at 25:8-18.  Plaintiff and Ms. Holmes were married in a
religious ceremony in April 2005, although plaintiff's divorce
from his former wife, who resides in New York, did not become
final until March 6, 2008.  *Id.* at 22:8-20; Pl.'s Aff. ¶ 4.
Plaintiff does not currently maintain a residence in Panama,
Seales Dep. at 10:13-16, but did maintain a residence there as of
October 2005.  *Id.* at 10:17-23.  Plaintiff has a bank account in
Panama, although he has not used it for six years.  *Id.* at 53:4-
9; Pl.'s Aff. ¶ 15.

When plaintiff is in Jamaica, he stays at 5 Drum Lane in Bog
Walk, Saint Catherine, where his current wife and their two
children now reside.[4]  Seales Dep. at 6:25-7:12; 23:6-18.
Plaintiff has stayed at this address intermittently for
approximately the last four years.  *Id.* at 7:9-25.  Plaintiff
maintains a joint bank account with his current wife in Jamaica,
*id.* at 53:10-27, receives treatment from a psychologist there,
*id.* at 21:2-13, and receives mail at a Bog Walk, Saint Catherine
post office box, which his wife also uses.  *Id.* at 54:7-13; Pl.'s
Aff. ¶ 15.  Plaintiff testified that in 2007, he made two or

---

[4] Plaintiff and his wife's second child was born in approximately
October 2007.  Seales Dep. at 23:6-12.

three trips to Jamaica to stay with his wife and children, and
that each trip lasted approximately two or three months.  Seales
Dep. at 31:3-22.  Plaintiff states, however, that he has always
intended to bring his children to the United States, that he has
obtained American citizenship for one of the children, and that
he is working on obtaining citizenship for the other child.
Pl.'s Aff. ¶ 14; *see also id.* Ex. 8 (copy of older child's United
States passport).

Defendant COPA is a business corporation organized and
existing under the laws of Panama, with its principal place of
business located in Panama.  Am. Compl. ¶ 2.  Defendants "John
Doe" and "Jane Doe" 1-10 are unknown employees of defendant COPA.
*Id.*  Defendant COPA is a provider of international airline
passenger and cargo services offering flights in over 21
countries in North, Central and South America.  *Id.* ¶ 8.  It
maintains an office and employs staff in the State of New York,
from which it derives substantial revenue and where it maintains
its principal presence in the United States.  *Id.*  Defendant COPA
is a fully owned subsidiary of Copa Holding SA, which is listed
on the New York Stock Exchange.  *Id.*

Events Leading to This Action

Prior to one of plaintiff's trips from Panama to Jamaica,
plaintiff contacted defendant COPA to inquire whether he could
legally take his firearm, licensed in Panama, into Jamaica and,

if so, what the relevant procedures were. *Id.* ¶ 9. Plaintiff alleges that he was informed by COPA employees that he could legally take his firearm into Jamaica if he declared his intention to transport the firearm at check-in, provided evidence and verification of the firearm license, had the firearm inventoried and handed over to the defendants for transportation, and upon arrival in Jamaica, applied for and obtained a permit from the relevant Jamaican authority to re-possess his firearm. *Id.* ¶ 10.

On October 3, 2005, plaintiff boarded a COPA flight from Panama to Jamaica. *Id*. ¶ 11. He declared his firearm and produced his license. *Id.* ¶ 12. COPA employees accepted the firearm and provided plaintiff with his boarding pass and baggage claim receipt. *Id.* Upon boarding the aircraft, plaintiff was summoned to the cockpit by the pilot, who presented the firearm case to plaintiff. *Id.* ¶ 13. Plaintiff opened the case and the pilot separated the ammunition from the firearm, inventoried the firearm and the ammunition, issued plaintiff with a receipt, and took possession of the firearm. *Id.* The pilot allegedly informed plaintiff that defendants would deliver the firearm to the proper Jamaican authority upon arrival and advised plaintiff that he could claim the ammunition from Jamaican customs with the receipt. *Id.* ¶ 14.

When plaintiff's flight landed in Jamaica, plaintiff went to

claim his regular baggage and saw his firearm lying next to the
conveyor belt, unattended. *Id.* ¶ 15. He retrieved the firearm
and took it directly to Jamaican customs. *Id.* ¶ 16. He informed
Customs Officer Delroy Allen of the circumstances and his desire
to obtain permit to bring the firearm into Jamaica. Customs
officers tried to confirm plaintiff's account with the COPA
pilot, but the aircraft was already on its return trip to Panama.
*Id.*

Plaintiff was arrested and detained by the Jamaican
authorities for (a) illegal possession of a firearm, (b) illegal
possession of ammunition, (c) importing a firearm without a
license, and (d) breach of the Customs Act. The offenses carry a
penalty of life imprisonment. *Id.* ¶ 17.

Plaintiff was subsequently charged with illegal possession
of a firearm, illegal possession of ammunition, and illegal
importation of firearms and ammunition in the High Court Division
of the Gun Court for the Island of Jamaica. *Id*. ¶ 18. At a
hearing of the charges against plaintiff on October 5, 2005, the
presiding Judge requested a written statement from COPA attesting
to the fact that plaintiff declared his firearm and that it was
transported with the knowledge of defendants. *Id.* ¶ 19.
Plaintiff was remanded into custody pending receipt of this
statement. *Id.*

Plaintiff repeatedly tried to contact defendants, either

directly or through the Panamanian Embassy in Jamaica, to request such a statement. *Id.* ¶ 20. By letter dated November 9, 2005, defendant COPA stated that plaintiff and COPA followed the procedure established in COPA's security manual regarding the transport of a firearm and that the firearm had been dissembled and, together with the separated ammunition, placed inside plaintiff's checked luggage. *See* Affirmation of Okechukwo Valentine Nnebe dated December 6, 2007, Ex. 1 (copy of letter). Defendant COPA did not state that plaintiff had handed over his firearm to the COPA pilot for transportation to the Jamaican authorities. *Id.*

The criminal charges against plaintiff were eventually dismissed on April 18, 2006. Am. Compl. ¶ 21. During their pendency, plaintiff was incarcerated for eighteen days and thereafter prohibited from leaving Jamaica. *Id.*

On July 12, 2007, plaintiff commenced this action. On November 16, 2007, defendant COPA moved to dismiss plaintiff's complaint on the grounds of *forum non conveniens*. I denied the motion by memorandum opinion and order filed February 26, 2008. The following day, on February 27, 2008, plaintiff filed the Amended Complaint. Defendant COPA filed an Answer to the Amended Complaint on March 25, 2008, raising affirmative defenses including lack of subject matter jurisdiction and *forum non conveniens.* On April 17, 2008, plaintiff was deposed in

connection with this matter, and limited discovery was subsequently exchanged.  The present motions followed on June 27, 2008.

**DISCUSSION**

I.   Subject Matter Jurisdiction

Defendant COPA moves to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).  First, it argues that diversity jurisdiction does not exist.  In the alternative, it maintains that the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11, generally known and hereafter referred to as the "Warsaw Convention," deprives this Court of subject matter jurisdiction.  I consider both arguments below.

A.   *Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction*

 A case is properly dismissed under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *See* Fed. R. Civ. P. 12(b)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss a cause of action pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the

factual basis for the court's subject matter jurisdiction."
*Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.
Cir. 1993). For purposes of such a motion, "the allegations in
the complaint are not controlling . . . and only uncontroverted
factual allegations are accepted as true." *Id.* "All other
facts underlying the controverted jurisdictional allegations are
in dispute and are subject to fact-finding by the district
court." *Id.* at 1584. Both the movant and the pleader are
permitted to use affidavits and other pleading materials to
support and oppose such a motion. *Zappia Middle E. Constr. Co.
v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

B.   *Diversity Jurisdiction*

First, defendant COPA argues that plaintiff has not met his
burden of establishing federal diversity jurisdiction under 28
U.S.C. § 1332(a)(2), which provides that federal "district courts
shall have original jurisdiction of all civil actions . . .
between . . . citizens of a State and citizens or subjects of a
foreign state[.]" A United States citizen domiciled abroad does
not qualify as a "citizen[] of a State" within the meaning of 28
U.S.C. § 1332(a)(2). *See, e.g.*, *Herrick Co., Inc. v. SCS
Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("United States
citizens domiciled abroad are neither citizens of any state of
the United States nor citizens or subjects of a foreign state, so
that § 1332(a) does not provide that the courts have jurisdiction

over a suit to which such persons are parties") (internal
citations and quotation marks omitted); *see also Mohr v. Allen*,
407 F.Supp. 483, 487 (S.D.N.Y. 1976); *Haggerty v. Pratt Inst.*,
372 F.Supp. 760, 761-62 (E.D.N.Y. 1974).  Accordingly, in order
for subject matter jurisdiction over this case to exist,
plaintiff must establish that his domicile is in the United
States.  *See Mohr v. Allen*, 407 F.Supp. at 487 FN* ("Domicile is
the test for the 'citizenship' required by 28 U.S.C. s
1332(a)(2)").[5]

Domicile has been described as the place where a person has
"his true fixed home and principal establishment, and to which,
whenever he is absent, he has the intention of returning."
*Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (citing 13B
C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure
§ 3612, at 526 (2d ed. 1984)).  At any given time, a person has
but one domicile.  *See, e.g.*, *Rosario v. INS*, 962 F.2d 220, 224
(2d Cir. 1992).  One acquires a "domicile of origin" at birth,
which is presumed to continue until a change in domicile occurs.
*Lindardos*, 157 F.3d at 948 (internal citation omitted).

---

[5] Plaintiff suggests that he is a "citizen[] of a State" within the
meaning of 28 U.S.C. § 1332(a)(2) merely by virtue of his status as a United
States citizen.  This is not the case.  Courts in this district have noted the
"anomaly" that arises when "a [United States citizen] plaintiff, having lost
his state citizenship by acquiring a foreign domicile but not foreign
citizenship, has lost his right to sue on diversity grounds under § 1332(a)(1)
in addition to his failure to acquire § 1332(a)(2) rights.  Thus, he is denied
a federal forum where his neighboring foreign citizen would not be."
*Haggerty*, 372 F.Supp. at 761-62.

Thereafter, "[a] domicil [sic] once acquired is presumed to
continue until it is shown to have been changed." *Mitchell v.
United States*, 88 U.S. (21 Wall.) 350, 353 (1874); *see also
Gutierrez v. Fox,* 141 F.3d 425, 427 (2d Cir. 1998).

A party alleging a change of domicile has the burden of
proving it. *Gutierrez,* 141 F.3d at 427. To satisfy this burden,
two things are indispensable:

> First, residence in a new domicil [sic]; and, second, the
> intention to remain there. The change cannot be made except
> facto et animo. Both are alike necessary. Either without
> the other is insufficient. Mere absence from a fixed home,
> however long continued, cannot work the change.

*Gutierrez*, 141 F.3d at 428 (citing *Sun Printing & Publishing
Ass'n v. Edwards*, 194 U.S. 377, 383 (1904)). To determine the
relevant intent, "[a] court must consider the entire course of a
person's conduct." *Pacho v. Enterprise Rent-A-Car*, 510 F.Supp.2d
331, 333 (S.D.N.Y. 2007) (internal citation omitted). However,
because a plaintiff bears the burden of establishing citizenship
supporting diversity jurisdiction, "a party seeking to challenge
diversity by alleging a change of domicile does not, even under
*Gutierrez*, bear the burden of proving that change if the party
seeking to establish diversity has not carried its (prior) burden
of establishing a specific initial domicile from which the change
would be a departure." *Herrick*, 251 F.3d at 324.

The first question I must resolve is whether plaintiff has
met his burden of establishing a "specific initial domicile"

supporting diversity jurisdiction. Although plaintiff was born in Panama, his domicile of origin, plaintiff argues that he subsequently changed his domicile to New York State. There is ample evidence to support this conclusion. Plaintiff acquired American citizenship at some point between 1983 and 1987. The parties do not dispute that plaintiff was resident in the State of New York from 1989 to 1999. During that time, plaintiff was twice employed in New York and began to receive disability benefits, which were deposited into a New York bank account. Plaintiff has an expired New York driver's license, a New York voter card, and still receives mail in New York. Taken together, these facts are sufficient to show that at least as of 1999, plaintiff resided in New York with the intent to remain there.

Having established a change of domicile from Panama to New York State, plaintiff's domicile is presumed to continue there unless defendant COPA can show that it changed. *See Mitchell*, 88 U.S. (21 Wall.) at 353. In support of its argument that plaintiff's domicile changed, and was not in New York State as of the filing of this action in July 2007, defendant COPA points to a number of factors. First, according to defendant COPA's reading of plaintiff's passports, plaintiff appears to have spent only one week in the United States in 2006, six weeks in the United States in 2007, and was not in the United States when the initial complaint in this matter was filed on July 17, 2007.

Thus, plaintiff was not resident in New York at the time this suit was commenced. *See, e.g.*, *Catlin v. Sobol*, 93 F.3d 1112, 1119 (2d Cir. 1996) ("The traditional test for residency requires both physical presence plus intent to remain") (citing *Martinez v. Bynum*, 461 U.S. 321, 330 (1983)). In addition, in October of 2005, plaintiff told the Jamaican police that he had previously resided in Brooklyn, but that he had resided in Panama since 1999. Sometime between October of 2005 and April of 2006, plaintiff's attorney wrote in a submission to a Jamaican court that plaintiff was "in the process of gradually moving to Jamaica." Plaintiff's current wife and children live in Jamaica, and plaintiff visits them two or three times a year, staying two or three months at a time. He receives mail in Jamaica, maintains a joint account there with his wife, and has a treating physician there.

Plaintiff denies that he ever intended to make Jamaica (or Panama) his permanent home. He states that he always intended to return to the United States, and indeed intends to bring his children from Jamaica to the United States. Plaintiff has obtained a United States passport for one of the children, and seeks to obtain a United States passport for the other. There is, however, reason to doubt plaintiff's alleged intention to return to the United States. Plaintiff has let his driver's license expire. There is no evidence that plaintiff has voted in

a recent election.  There is no evidence of recent United States

tax returns, or of mail addressed to plaintiff at his alleged

current residence in the United States.  Nevertheless, plaintiff

still maintains a bank account in New York, into which disability

benefits from American agencies are deposited.  Plaintiff has

consistently returned to New York in recent years, even if he has

not long remained here.  Considering the evidence as a whole, I

conclude that defendant COPA has not met its burden of

establishing that plaintiff intends to remain abroad, so that his

domicile may be said to have changed from New York to either

Panama or Jamaica.  Accordingly, plaintiff has established

diversity jurisdiction under 28 U.S.C. § 1332(a)(2), and

defendant COPA's motion to dismiss on this ground is denied.

C.   *Jurisdiction Under the Warsaw and Montreal Conventions*

        In the alternative, defendant COPA argues that this action

must be dismissed for lack of subject matter jurisdiction by

operation of the Warsaw Convention.  Both plaintiff and defendant

COPA appear to overlook the fact, however, that the Warsaw

Convention was succeeded by the Montreal Convention,[6] which

"entered into force in the United States on November 4, 2003,

updating and replacing the uniform system of liability for

international air carriers previously established by the Warsaw

---

[6] The Montreal Convention is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal on 28 May 1999, reprinted in S. Treaty Doc. No 106-45, 1999 WL 33292734 (2000).

Convention." *In re Nigeria Charter Flights Contract Litig.*, 520
F.Supp.2d 447, 452 (E.D.N.Y. 2007) (citing *Ehrlich v. Am.*
*Airlines Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)).  Like the
Warsaw Convention, the Montreal Convention has been construed as
having a complete preemptive effect over all claims within its
scope.  *El Al Israel v. Tseng*, 525 U.S. 155, 161, 175 (1999)
(Warsaw Convention); *King v. American Airlines*, 284 F.3d 352,
356-57 (2d Cir. 2002) (same); *Shah v. Pan Am. World Servs., Inc.*,
148 F.3d 84, 97-98 (2d Cir. 1998) (same); *Paradis v. Ghana*
*Airways Ltd.*, 348 F.Supp.2d 106, 111 (noting that preemptive
effect of the Montreal Convention is "substantially the same" as
that of the Warsaw Convention).  The preemptive effect of the
Montreal Convention is found in Article 29, which states:

> In the carriage of passengers, baggage and cargo, any action
> for damages, however founded, whether under this Convention
> or in contract or in tort or otherwise, can only be brought
> subject to the conditions and such limits of liability as
> are set out in this Convention[.]

Montreal Convention, Art. 29.  The Montreal Convention further
provides that only certain fora have subject matter jurisdiction
over claims within the scope of the Convention.  Before turning
to the issue of this Court's jurisdiction, however, I consider
whether the Montreal Convention preempts and governs plaintiff's
claims in this matter.

Article 17(1) of the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death
> or bodily injury of a passenger upon condition only that the

accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention Art. 17(1).[7]  The Supreme Court has made clear that the scope of Article 17 of the Warsaw Convention, which tracks the language of Article 17 of the Montreal Convention,[8] encompasses "all personal injury cases stemming from occurrences on board an aircraft or in embarking or disembarking," but does not include cases stemming from occurrences before or after "the operations of embarking or disembarking." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168, 172 (1999).  "Whether the injury was in fact caused by an 'accident' and whether the injury is 'bodily,' as both terms are defined by the Warsaw Convention, are inquiries upon which liability depends, but they are not reached unless the claims come within the scope of the Warsaw Convention." *Singh v. North Am. Airlines*, 426 F.Supp.2d 38, 45 (E.D.N.Y. 2006) (internal citation omitted).  In other words, "restriction[s] on liability affect[] neither the analysis of the substantive scope of [Article 17] nor its preemptive effect." *King v. Am.*

---

[7] The other provisions in the Montreal Convention governing substantive liability concern damage to or loss of baggage or cargo, *see* Montreal Convention Arts. 17(2), 17(3), 18, as well as damage occasioned by delay, *see id.* Art. 19, and are not at issue here.

[8] Although the Montreal Convention replaced the Warsaw Convention, since many similar provisions remain, courts use cases interpreting the Warsaw Convention to interpret similar Montreal Convention provisions. *See, e.g., Baah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591, 595-96 (S.D.N.Y. 2007); *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 110 n.4-5 (S.D.N.Y. 2006), *aff'd*, 194 Fed. Appx. 5 (2d Cir. 2006).

*Airlines*, 284 F.3d 352, 359 (2d Cir. 2002).

Accordingly, if the injuries of which plaintiff complains were caused by events that occurred onboard or during the process of embarking or disembarking, the Montreal Convention governs plaintiff's claims.[9]  The Second Circuit has articulated four factors to be considered in determining whether events occurred "in the course of any of the operations of embarking or disembarking," namely: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movement; (3) the imminence of actual boarding [or disembarking]; and (4) the physical proximity of the passengers to the gate." *Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 10 (2d Cir. 1990).

Here, the injuries of which plaintiff complains[10] were allegedly caused by (1) defendant COPA's assurances prior to plaintiff's travel from Panama to Jamaica that plaintiff could transport his firearm to Jamaica if he followed certain procedures, *see* Am. Compl. ¶¶ 10-12, 22-27; (2) defendant COPA's delivery of the firearm and ammunition to the luggage carousel rather than to Jamaican authorities, *see id.* ¶¶ 13-16, 28-32; and

---

[9] I note that I need not and do not here decide whether the injuries alleged were bodily or were caused by an accident as those terms are defined by the Warsaw and Montreal Conventions.

[10] Specifically, plaintiff complains of wrongful arrest and detention in Jamaica, as well as his subsequent criminal prosecution and restriction from leaving Jamaica for over seven months.

(3) defendant COPA's refusal to provide an exculpatory statement to the Jamaican Criminal Court, *see id.* ¶¶ 19-20, 33-37.  The first and third events in this list did not occur onboard the plane, and do not qualify as events occurring "in the course of any of the operations of embarking or disembarking," as they did not take place on the day of plaintiff's flight to Jamaica and are simply too far removed in time from embarking and disembarking.  Accordingly, those of plaintiff's state law claims predicated on these events -- namely, his claims for willful and/or negligent misrepresentation, willful misconduct, and intentional infliction of emotional distress -- are not governed by the Montreal Convention.

The second event allegedly causing injury to plaintiff requires closer analysis.  When defendant COPA delivered plaintiff's firearm and ammunition to the baggage claim, passengers were either in the process of traveling from the plane to the baggage claim, or waiting at the baggage claim itself.  It is unclear whether the passengers' movements were restricted at the time, but as plaintiff had not yet cleared customs when he noticed his firearm and ammunition on the conveyer belt, it is reasonable to assume that the passengers were in a secure area. There is no indication that an unusually long period of time elapsed between the passengers' disembarking from the plane and the placement of passenger luggage in the baggage claim, and

there is no evidence of how close or how far the baggage claim is in relation to the gate.  I note, however, that the unloading of passenger items from a plane and the transportation of such items to a baggage claim is a routine and necessary function attendant to passenger disembarking, and as such, is most easily understood as part of "the operations of embarking or disembarking."  I conclude that the delivery of the firearm and ammunition to the baggage claim was an event that occurred in the course of the operations of disembarking, and accordingly, plaintiff's claim of gross negligence, which derives from this event, is governed by the Montreal Convention.

Having determined that the Montreal Convention controls one of plaintiff's claims, I turn to the question of whether this Court has jurisdiction over that claim under the terms of the Convention.  The Montreal Convention provides that all actions under the Convention "must be brought, at the plaintiff's option, in the territory of one of the States Party to the Convention before a court of the carrier's domicile or the carrier's principal place of business, the place where the contract was made, or the place of destination of the passenger."  Montreal Convention, Art. 33(1).  Article 33(2) provides a fifth basis for jurisdiction in actions for passenger death or injury, which is the state of principal and permanent residence of the passenger. Montreal Convention, Art. 33(2).  Thus, plaintiff may bring an

action in the United States for damages pursuant to the Montreal
Convention only when the United States is: (1) "the domicile of
the carrier"; (2) the "principal place of business" of the
carrier; (3) the place where the carrier has a "place of business
through which the contract has been made"; (4) "the place of
destination"; or (5) the "principal and permanent residence" of
the passenger.

The parties do not dispute that that the first, second,
third and fourth bases of jurisdiction set forth above do not
confer jurisdiction on this Court, as Panama is defendant COPA's
domicile and principal place of business, plaintiff's ticket was
purchased in Panama, and plaintiff traveled from Panama to
Jamaica.  The parties do not address whether the fifth ground
confers jurisdiction.  I conclude that it does not.  Article
33(3)(b) of the Montreal Convention defines "principal and
permanent residence" for the purposes of that Article as "the one
fixed and permanent abode of the passenger at the time of the
accident," and further notes that "the nationality of the
passenger shall not be the determining factor in this regard."
At the time of the events leading to this action, in October of
2005, plaintiff told Jamaican police that he was residing in
Panama.  Plaintiff testified at his deposition that he maintained
a residence in Panama as of that time.  While, as noted above,
defendant COPA has not established that plaintiff's domicile

changed from the United States to either Panama or Jamaica after
1999, it does not follow that plaintiff, who bears the burden of
establishing subject matter jurisdiction, has established that
New York was his "principal and permanent residence" in October
of 2005.  For this reason, I conclude that I do not have
jurisdiction over plaintiff's claim arising under the Montreal
Convention.

## II.  Forum Non Conveniens

Having established that subject matter jurisdiction exists
over those of plaintiff's claims that are not preempted by the
Montreal Convention, I now turn to the question of whether this
action should nevertheless be dismissed in its entirety on *forum
non conveniens* grounds.  The doctrine of *forum non conveniens*
permits a court, in its discretion, "to resist the imposition
upon its jurisdiction," even though jurisdiction may be lawfully
exercised and venue is technically proper, where the convenience
of the parties and interests of justice favor trial in another
forum.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947); *see
also Koster v. Am. Lumbermens Mut. Casualty Co.*, 330 U.S. 518,
527 (1947).[11]  "Although a district court enjoys broad discretion

[11] A preliminary question is whether, under *Erie R. Co. v. Tompkins*, 304
U.S. 64 (1938), state or federal law of *forum non conveniens* applies in a
diversity case.  The Supreme Court has, on three occasions, explicitly left
this issue unresolved.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249
n.13 (1981); *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 509 (1947) (New York law
same as federal law); *Williams v. Green Bay & W.R. Co.*, 326 U.S. 549, 559
(1946) (same).  The Second Circuit has stated that the similarity between New
York law and federal law on *forum non conveniens* doctrine obviates the need to

in applying this principle," the Second Circuit "has outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.2d 146, 153 (2d Cir. 2005).

First, the court must determine the degree of deference properly accorded to plaintiff's choice of forum. *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Second, the court must determine whether an alternative and adequate forum exists. *Id.* at 73. Lastly, the court must balance the private and public interests implicated in the choice of forum. *Id.* at 73-74. To prevail on a motion to dismiss based on *forum non conveniens*, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in *Gilbert*, the balance of convenience tilts strongly in favor of trial in the foreign forum. *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991).

By memorandum opinion filed February 26, 2005, I declined to dismiss this action on *forum non conveniens* grounds. However, in light of new evidence adduced by defendant COPA since the date of that decision, as well as the intervening filing of plaintiff's Amended Complaint, I proceed to reconsider my previous

resolve the *Erie* question. *Schertenleib v. Traum*, 589 F.2d 1156, 1162 n.13 (2d Cir. 1978). For simplicity, federal law will be applied.

decision.[12]

A.    *Degree of Deference*

For reasons set forth in my previous memorandum opinion, I
determined that defendant COPA had failed to show that plaintiff
did not reside in the State of New York at the time this action
was commenced.  *Seales v. Panamanian Aviation Co. Ltd.*, No.
CV-07-2901, 2008 WL 544705, at *1 n.2 (E.D.N.Y. Feb. 26, 2008).
This factor weighed heavily in my assessment of defendant COPA's
*forum non conveniens* argument.  Because I accepted plaintiff's
claim that he resided in New York and had therefore brought suit
in his home forum, after reviewing all relevant circumstances, I
accorded substantial deference to plaintiff's choice of forum.
*Id.* at *4 ("It is significant that plaintiff has sued in his home
forum and it is one in which COPA is amenable to process. . . .
While this conclusion does not foreclose a dismissal for *forum
non conveniens* . . . the starting point will be one that
substantially favors the plaintiff").  I then determined that
although Jamaica was an adequate alternative forum, a balancing

_____

[12] Plaintiff argues that in light of my previous decision, the present
motion should have been brought as a motion for reconsideration rather than a
motion to dismiss.  This argument does not account for the fact that plaintiff
filed an Amended Complaint following my decision dismissing his first
Complaint.  In any case, even if this motion were brought as a motion for
reconsideration, it would be proper in light of new evidence adduced by
defendant COPA that was not available to it at the time of my prior decision.
*See, e.g., Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d
Cir. 1983).  ("The major grounds justifying reconsideration are 'an
intervening change of controlling law, the availability of new evidence, or
the need to correct a clear error or prevent manifest injustice'") (quoting 18
C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at
790 (1981) (footnote omitted)).

of the relevant private and public interest factors did not overcome the deference due to plaintiff's choice of his home forum. *Id.* at *5-7.

The situation at this stage is different. As discussed above, through passport and other evidence adduced since my prior decision, defendant COPA has shown that plaintiff was not resident in the State of New York at the time this action was filed. Nor is there any evidence that plaintiff was resident elsewhere in the United States at that time.[13] Because plaintiff was living abroad at the time this action was commenced, the deference due to his choice of a New York forum is diminished. *See, e.g.*, *Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003) (noting that the choice of forum of an expatriate U.S. citizen living abroad receives a diminished degree of deference) (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 n.5 (2d Cir. 2001)). My prior assessment of the *Iragorri* factors relevant to determining the degree of deference due to plaintiff's choice of forum

---

[13] While a resident American plaintiff's "home forum" for *forum non conveniens* purposes may be any federal district court in the United States, especially if the case involves foreign courts, *see, e.g.*, *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 n.4 (2d Cir. 2000) (noting that in a *forum non conveniens* case involving a foreign court, the fact that plaintiffs were not citizens of the state in which they brought suit did not preclude the chosen United States forum from qualifying as plaintiffs' "home forum"); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103 ("The benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides"), it does not follow that a non-resident American enjoys the privilege of claiming a "home forum" in a state in which he does not reside.

remains unchanged, aside from my conclusion here that plaintiff did not bring suit in his home forum.[14]  *See Seales*, 2008 WL 544705, at *7-10.  I conclude that the deference due to plaintiff's choice of forum is diminished by the fact that plaintiff resided abroad at the time this suit was filed.

B.  *Balancing of Interests*

Having previously determined that Jamaica is an adequate alternative forum, I proceed directly to the weighing of relevant public and private interest factors.

i.  *Private Interest Factors*

"The first set of factors considered are the private interest factors -- the convenience of the litigants."  *Iragorri*, 274 F.3d at 73.  These factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and

---

[14] In my prior decision, I considered the *Iragorri* factors as follows: "Here there are somewhat conflicting considerations.  Plaintiff flew to Jamaica from Panama.  His firearm permit was issued by Panama.  Plaintiff admits that several witnesses are located in either Jamaica or Panama.  There is also some indication that plaintiff may have resided in Jamaica for a period of time.  Plaintiff, however, is an American citizen now living in Brooklyn and, as noted above, payments from various United States government agencies are deposited into a New York bank account.  Moreover, COPA has an office in New York as well as flights to and from New York.  COPA's parent is listed on the New York Stock Exchange.  Nnebe Aff. ¶ 24; *see also* Proposed Amended Complaint ¶ 8. COPA's own presence in New York is reason for it to expect that circumstances may arise that would require it to litigate here." *Seales*, 2008 WL 544705, at *9-10.

inexpensive.  There may also be questions as to the enforcibility of a judgment if one is obtained." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Defendant COPA argues that the witnesses required for the case are located more conveniently to Jamaica than New York. COPA contends these witnesses are its employees, the Jamaican customs and police officers involved in the proceedings against plaintiff, plaintiff's Jamaican criminal defense attorney, representatives of the High Court Division of the Gun Court, the airport baggage handlers, persons familiar with plaintiff's conduct during his incarceration in Jamaica, and persons familiar with plaintiff's alleged damages, including his family and psychologist.  Defendant COPA also notes that the documents and official court transcripts related to the Jamaican criminal proceedings are located in Jamaica.

The COPA employees with whom plaintiff interacted concerning the transportation of his firearm, however, are located in Panama, not Jamaica.  Defendant COPA has made no showing as to why it would be more burdensome to produce its employees in New York, to which it has several flights, than in Jamaica. Plaintiff has stated he will make his Jamaican criminal attorney, his wife, and his psychologist available in New York for testimony.  *See Seales*, 2008 WL 544705, at *5.

The customs and police officers, representatives of the Gun

Court, and the airport baggage handlers[15] are located in Jamaica and do not appear to be subject to the jurisdiction of this Court. Defendant COPA argues that to properly defend itself, it needs to depose these witnesses. I agree that these witnesses may be relevant and even important to COPA's defense. I note, however, that as I pointed out in my prior opinion, defendant COPA does not appear to have considered that the testimony of these witnesses could be compelled by other means, such as a letter of request. *See* Fed. R. Civ. Pro. 28(b); *Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir. 1982) ("any difficulties . . . regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory"); *Torres v. Int'l Hotels (Jamaica) Ltd.*, 2007 WL 2254929, at *1 (S.D.Fla. Aug. 3, 2007).

Finally, although the burden of litigating abroad is generally a greater obstacle to an individual than a corporation, *see Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004), defendant COPA has shown that plaintiff is not a New York resident, and in fact spent most of the year this action was filed in Jamaica. In light of these facts, I infer that convenience was not the sole factor that motivated

---

[15] Defendant COPA has not explained how the testimony of the baggage handlers would be relevant, given plaintiff's claim that the COPA pilot told plaintiff he would turn the firearm over to the proper authorities.

plaintiff's choice of New York as the forum for this action.  *See*

*Doe v. Hyland Therapeutics Div.*, 807 F.Supp. 1117, 1123 (S.D.N.Y.

1992) ("Where a plaintiff brings suit in a distant forum, a court

can infer that motives other than convenience influenced the

decision").

The presence of many, if not most key witnesses in Jamaica,

together with plaintiff's presence in Jamaica for most of the

year this action was filed, tilt the private interest factors in

favor of litigating this action in Jamaica.  Given the diminished

deference due to plaintiff's choice of forum, the private

interest factors weigh in favor of dismissal.

*ii.  Public Interest Factors*

Factors of public interest also have place in applying the
doctrine.  Administrative difficulties follow for courts
when litigation is piled up in congested centers instead of
being handled at its origin.  Jury duty is a burden that
ought not to be imposed upon the people of a community which
has no relation to the litigation.  In cases which touch the
affairs of many persons, there is reason for holding the
trial in their view and reach rather than in remote parts of
the country where they can learn of it by report only.
There is a local interest in having localized controversies
decided at home.  There is an appropriateness, too, in
having the trial of a diversity case in a forum that is at
home with the state law that must govern the case, rather
than having a court in some other forum untangle problems in
conflict of laws, and in law foreign to itself.

*Gilbert*, 330 U.S. at 508-09 (1947).

Plaintiff is a United States citizen, a United States

veteran, and a recipient of Social Security and veterans'

benefits.  He is not a resident of New York or of the Eastern

District.  However, as discussed above, defendant COPA has failed
to establish that plaintiff's domicile is no longer in the
Eastern District.  *Gross v. British Broadcasting Corp.*, 386 F.3d
224, 234 (2d Cir. 2004).  Due to this connection, jury duty is
not unduly burdensome upon the residents of this district.

However, defendant COPA has succeeded in showing that
Jamaica has a more robust interest in this matter.  Plaintiff
spends a great deal of time in Jamaica, and indeed spent a
majority of his time there the year this action was filed.  Many
of the events leading to this action occurred in Jamaica and
involved Jamaican citizens.  By contrast, plaintiff spent only
seven weeks in New York from 2006 to 2007.  None of the events
leading to this action occurred in New York, nor did they involve
any New York residents.[16]

Accordingly, the public interest factors weigh against
litigating this case in plaintiff's chosen forum, which is not
entitled to substantial deference.  For the reasons set forth
above, COPA has demonstrated that the Eastern District of New
York is genuinely inconvenient and that its proposed forum,
Jamaica, is significantly preferable.  Thus, COPA's motion to

---

[16] Defendant COPA states in conclusory fashion that Jamaican law would
govern plaintiff's claims for relief.  If this conclusion were accurate, it
would also weigh in favor of dismissal.  Any contract entered into between
plaintiff and COPA, however, was entered into in Panama, and many of the
actions, representations, and omissions at issue occurred in Panama.  As such,
there is at least as strong an argument that Panamanian law should govern the
substantive claims.  No party has briefed the issue, and it is therefore not
clear whether United States, Panamanian or Jamaican law will apply.
Accordingly this factor does not support dismissal.

dismiss plaintiff's remaining claims on the basis of *forum non
conveniens* is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to
dismiss for lack of subject matter jurisdiction is granted in
part, and defendant's motion to dismiss for *forum non conveniens*
is granted.  The Clerk is directed to transmit a copy of the
within to all parties and the assigned Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, NY
          February 17, 2009


               By: /s/ Charles P. Sifton (electronically signed)
                   United States District Judge